UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

```
---------------------------------------------)
UNITED STATES OF AMERICA       )
                               )
        v.                     )       CRIMINAL NO. 07-MJ-169-LTS
                               )
STACY CAINE                    )
-------------------------------------------   )
```

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS AND MOTION TO SUPPRESS

October 18, 2007

SOROKIN, M.J.

Defendant Stacy Caine requests that the Court "suppress all evidence seized as a result of an unlawful request to exit the vehicle" and "suppress the results of the breath test performed [on] the defendant." The government opposes. For the reasons set forth below, the Defendant's Motion to Suppress (Docket #4) is DENIED and Defendant's Motion to Dismiss (Docket #5), which also seeks suppression, is DENIED.

FACTUAL BACKGROUND

The following facts are undisputed, according to a sworn statement submitted by United States Park Ranger Morse and the Defendant's affidavit. On January 7, 2007 [1] at approximately 1:00 a.m., Morse observed the Defendant travel through a stop sign without properly stopping.

---

[1] The Defendant's affidavit states that the date of the incident was January 10, 2007.

1

Docket #1.  Morse stopped the vehicle and asked the driver for her license and registration. Docket #5.  Morse identified the driver as the Defendant.  Docket #1.  Morse observed that the Defendant had "bloodshot and glassy eyes."  Id.  Morse then questioned the Defendant, and inquired if she had been drinking.  Docket #5; Docket #1. The Defendant admitted to drinking earlier that night.  Docket #1.  Morse then asked the Defendant to exit the vehicle to undergo field sobriety tests.  Id. The Defendant failed the field tests.  Id.  Morse administered a preliminary breath test at the scene with a reading of 0.141 grams per 210 liters of breath.  Id.  The Defendant was placed under arrest and was taken into custody, where a second confirmation test was administered. Id.  The second test resulted in a reading of 0.123 grams per 210 liters of breath.  Id. The Defendant was charged in violation of 36 C.F.R. §4.23(a)(2) for operating under the influence of alcohol with blood alcohol level exceeding 0.08% and 36 C.F.R. §4.12 for failure to comply with a traffic control device.  Id.

The Defendant argues: (1) The Park Ranger did not have reasonable suspicion to believe she was engaged in criminal activity necessary to request that she exit the vehicle and undergo field sobriety tests; (2) the Defendant did not consent to exit the vehicle "as [she] did not feel [she] had a choice;" and (3) the breath analyzer administered on the Defendant was not approved or certified for use by the Commonwealth of Massachusetts, and the results from the analyzer should be suppressed.

DISCUSSION

A. Reasonable Suspicion

Under the Fourth Amendment, police officers may make a brief investigatory stop if, under the totality of the circumstances, they are aware of facts leading to a well-founded

suspicion that a person has, is, or about to engaged in criminal activity. United States v. Cortez, 449 U.S. 411, 417 (1981)(citing Terry v. Ohio, 392 U.S. 1, 16-19 (1968)).  It is well established that traffic violations constitute criminal conduct and provide enough reasonable suspicion to warrant an investigatory ("Terry") stop.  United States v. Bizier, 111 F.3d 214, 218 (1st Cir. 1997); United States v. Soares, 451 F.Supp.2d 282, 286 (D.Mass.2006).  Moreover, a police officer has the right to order a driver out of the vehicle during a Terry stop.  Pennsylvania v. Mimms, 434 U.S. 106, 111 n.6 (1977)(*per curium*)("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.")  The Defendant does not dispute that the Ranger's authority to stop her car based on the traffic violation.  Rather, the Defendant questions the sufficiency of the Ranger's suspicion to expand the scope of the initial stop and request that the Defendant undergo field sobriety tests.

1. Scope of the Initial Stop

Generally, the reasonableness of a Terry stop is evaluated based on a two-step inquiry. The Court must first consider, based on the totality of the circumstances, "whether the officer's action was justified at its inception; and second, whether the action taken was reasonably related in scope to the circumstances which justified the interference in the first place." United States v. Walker 924 F.2d 1, 3 (1st Cir. 1991)(citing United States v. Stanley, 915 F.2d 54, 55 (1st Cir. 1990)).

"To work the calculus of reasonable suspicion in the context of a traffic stop, an inquiring court must ask whether the officer's actions were justified at their inception, and if so, whether the officer's subsequent actions were fairly responsive to the emerging tableau-the circumstances

originally warranting the stop, informed by what occurred, and what the officer learned, as the stop progressed." United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001).  To that end, Courts have deemed field sobriety tests to be within the scope of the initial stop, when the stop is based on a reasonable suspicion that the driver was under the influence of alcohol.  See Rogala v. District of Columbia, 161 F.3d 44, 52 (C.A.D.C.1998).  If Officer Morse's initial stop was not based on a suspicion that the Defendant was impaired, he must demonstrate a reasonable suspicion of a further crime to extend the scope of his stop.  The officer's reasons for suspicion "are not to be dissected and viewed singly; rather, they must be considered as a whole." Id. at 55 (quoting United States v. Trullo, 809 F.2d 108, 111 (1st Cir. 1987)).  The reasonableness of this assessment is based on the perspective of the reasonable officer, not the reasonable person. Terry, 392 U.S. at 21-22.

    Defendant concedes the officer had reasonable suspicion, if not probable cause, to stop her car due to her alleged motor vehicle offense.  During the course of the stop, the Officer acquired additional undisputed facts: the Defendant's eyes were glassy and bloodshot and she had been drinking earlier.  The officer receives deference to "draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person."  United States v. Arvizu, 534 U.S. 266, 273 (2002).  He drew the conclusion that he had reasonable suspicion that she was operating under the influence and, thus, performed the field sobriety tests.

    Although bloodshot and glassy eyes could be the result of a number of innocent causes, it was equally reasonable to suspect that Defendant's condition was caused by alcohol consumption

4

(particularly after the Defendant admitted to drinking earlier in the night). ² See United States v. Frantz, 177 F.Supp.2d 760, 763 n.3 (S.D.Ohio 2001) ( ". . . there was no evidence . . . that the bloodshot eyes were caused by the driver having been awake for many hours . . . . there was evidence, however, that the bloodshot eyes were caused by alcohol consumption.")  Under these circumstances, Morse was justified in suspecting that the Defendant was intoxicated. The undisputed facts acquired during the stop, along with his observation of her failure to stop for a stop sign, provided the necessary reasonable suspicion. See Rogala, 161 F.3d at 52 ("at the time of the stop of [the defendant's] car for running a red light, [the officer] observed that [the defendant's] eyes were glassy and his face was bloated. These observations, coupled with [the traffic violation] are sufficient to justify a field sobriety test under the reasonable suspicion standard.").

Moreover "[there is a] significant public interest in preventing a motorist whom an officer reasonably believes may be intoxicated from continuing to drive, and . . . further detention for a field sobriety test is a minimal intrusion on an already stopped individual's privacy. " Kinberg v. District of Columbia, 1998 WL 10364, *8 (D.D.C. 1998); see also, Frantz, 177 F.Supp.2d at 763 (". . . field sobriety tests do not involve a major intrusion on liberty . . . moreover, the intrusion is reasonable both from the perspective of the driver and of society at large.")  Therefore, Ranger Morse did have specific and articulable facts to support his suspicion that the Defendant was operating under the influence, and he was acting within the scope of his lawful investigatory

---

² The Defendant's Motion to Dismiss suggests that the condition of the Defendant's eyes can be attributed to the time of the day, because the stop occurred at 1:00 a.m. However, the Defendant offers no further evidence on this matter.

power to direct the Defendant to undergo field sobriety tests.

2. Consent to Field Sobriety Tests

The Defendant asserts in her affidavit that she did not consent to the field sobriety tests because she felt that she "did not have a choice" when the Ranger ordered her out of her vehicle. The Ranger, however, did not need her consent. He possessed the authority to order her out of the car. Thus, her lack of consent is immaterial.

B. Admissibility of Breath Analyzer Results

Finally, the Defendant requests that her breath test results be suppressed and the case dismissed because the breath analyzer administered is not on the list of approved devices provided by the Massachusetts Office of Alcohol Testing in violation of Massachusetts law applicable to roads under federal jurisdiction by virtue of 32 C.F.R. § 634.35.[3] Although the regulation cited by the Defendant appears to require the use of state approved breath analyzer devices, the regulation is not applicable to this case. Title 32 of the Code of Federal Regulations concerns the Department of Defense, and the regulation cited by the Defendant establishes procedures for motor vehicle supervision on "military installations in the continental United States (CONUS) and overseas areas." 32 C.F.R. § 634.1(a).

The Defendant was arrested for a traffic violation on National Park Service land (albeit property named the Charlestown Navy Yard),[4] which is governed by 36 C.F.R. § 4 (Vehicles and

---

[3] The Defendant does not specify whether the same breath analyzer was administered for both tests.

[4] There is no evidence before the Court that the road on which defendant traveled at the time of the alleged offenses is within a military installation.

Traffic Safety on National Park Service land.)  Docket #1.  The scope of the regulation governing the Defendant's violation "appl[ies] . . . on all roadways and parking areas within a park area that are open to public traffic and that are under the legislative jurisdiction of the United States."  36 C.F.R. §4.1.  The National Park Services regulation does provide deference to state procedures, stating: "[u]nless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State Law.  State Law that is now or may later be in effect is adopted and made a part of the regulations in this part." 36 C.F.R. §4.2(a).

However, 36 C.F.R. § 4.23 supercedes, in this case, §4.2's reference to state law.  It specifically addresses federal procedures for chemical tests in national parks, providing that "any test shall be conducted by using accepted scientific methods and equipment of proven accuracy and reliability operated by personnel certified in its use." 36 C.F.R. § 4.23(c)(4).  The testing procedures specifically defined in this regulation, which do not defer to or incorporate state procedures, govern the breath tests administered to Defendant.  While this regulation does not specify the methods and procedures to employ when using a testing device with the level of detail set forth in the state rules cited by Defendant at the hearing, 501 C.M.R. § 2.55, the Park Service's regulation is sufficiently specific and comprehensive to satisfy the "unless" clause of § 4.2(a).  Other courts have reached the same conclusion.  See, e.g., United States v. Jackson, 470 F.Supp.2d 654, (S.D.Miss. 2007)(rejecting contention that breath analyzer results offered in support of § 4.23 prosecution must satisfy state law requirements under § 4.2)(citing cases); United States v. Mackey, 2006 WL 1699736, *2 (W.D.Va., 2006) ("The Code of Federal Regulations expressly adopts state traffic law for violations not specifically covered in the federal

regulations concerning national parks . . . 36 C.F.R. §4.23(a) specifically addresses DUI violations . . . and § 4.23(c) contains regulations concerning tests to be administered to determine intoxication . . . thus, state law is inapposite, and the court is not required to apply Virginia procedural requirements."); <u>United States v. Coleman</u>, 750 F.Supp. 191, 193 (W.D.Va.,1990) ("[36 C.F.R. § 4.23] deals specifically with the issue of parties who operate motor vehicles on areas designated to National Park Service control while under the influence of drugs or alcohol. Therefore, consistent with the mandate of 36 C.F.R. § 4.2 (1989), federal law preempts state law on the issue of intoxicated motor-vehicle operators within national park areas.")

  Whether or not the officers complied with the Park Service's regulation was not raised in the Defendant's Motion and, as both counsel agreed, is a question for trial.

CONCLUSION

    For the foregoing reasons, the Defendant's Motion to Suppress (Docket #4) is DENIED and the Motion to Dismiss (Docket #5) is DENIED.

    Trial will commence, at Defendant's request, on Tuesday March 18, 2008 at 9:00 a.m. continuting until 4:00 p.m.  The trial will continue on Wednesday March 19, 2008 with the same schedule, if necessary.  The Government indicates it anticipates no experts, Defendant has them and shall make its expert disclosures by February 1, 2008 with the Government's own responsive experts, if any, to be disclosed by March 1, 2008.  In addition, the parties are requested to submit copies of any exhibits to the Court by March 1, 2008 so that the Court may review them in anticipation of the trial.

                                      SO ORDERED.

                                      / s / Leo T. Sorokin
                                      UNITED STATES MAGISTRATE JUDGE